## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| LLOYD A. WEBSTER JR., M.D., <br><br> *Plaintiff,* <br><br> v. <br><br> RUTGERS-NEW JERSEY MEDICAL SCHOOL, DR. ROBERT L. BARCHI, DR. ROBERT L. JOHNSON and JOHN and JANE DOES NO. 1-10, <br><br> *Defendants.* | Civil Action No. 15-08689 <br><br> **OPINION** |

**John Michael Vazquez, U.S.D.J.**

## I. INTRODUCTION

This matter comes before the Court by way of the above-captioned Defendants' motion for summary judgment.[1]  D.E. 47.  The Court reviewed all submissions made in support and opposition,[2] and considered the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b).  For the reasons that follow, Defendants' motion is granted in part and denied in part.

---

[1] Also pending before the Court is Defendants' partial motion to dismiss, which is addressed in a separate opinion filed on the same day as this Opinion.

[2] Defendants' brief in support of its motion (D.E. 47) will be referred to as "Def. Br."  Plaintiff's brief in opposition (D.E. 53) will be called "Pl. Opp."  Defendants' reply brief (D.E. 54) will be referred to as "Def. Rep."

## II.    FACTS AND PROCEDURAL HISTORY

*Pro se* Plaintiff Lloyd A. Webster Jr. matriculated to Rutgers New Jersey Medical School's ("NJMS" or the "School") four-year Doctor of Medicine program in August 2007 as an anticipated member of the class of 2011. Defendants' Undisputed Statement of Material Facts ("DSOF") ¶ 1 (D.E. 47-2). NJMS maintains academic policies and requirements for all of its students, including the School's (i) Promotion Policy, (ii) United States Medical Licensing Exam Step-1 and Step-2 Policy ("USMLE Policy"), and (iii) Standards of Professionalism (the "Professionalism Policy"). *Id.* ¶ 3.

Under the Professionalism Policy, School administrators may submit a professionalism form (the "Professionalism Form(s)" or "Form(s)") to address any instances where a student has demonstrated a lapse in professionalism. *Id.* ¶ 7. The Professionalism Policy states, in relevant part: "If a student receives two or more forms in the third/fourth years then the student is required to appear before the [Committee on Student Affairs[3] ("CSA")] and the forms, the professional development plan(s), and the meeting with the CSA will be mentioned in the [student's] [Medical Student Performance Evaluation ("MSPE")]." An MSPE is a customized letter for each student that is prepared by the School and filed as a mandatory and integral component of the national medical residency "match" program. Declaration of Dr. James M. Hill ("Hill Dec.") ¶ 14 (D.E. 47-3). Plaintiff received NJMS's Professionalism Policy upon his matriculation to NJMS and was familiar with its content. DSOF ¶ 10.

On May 4, 2009, the CSA held a meeting where it reviewed a list of members of the class of 2011 who had completed their pre-clerkship training and were eligible for a promotion to third-

---

[3] The CSA is charged with the responsibility of reviewing the academic progress and standing of all students matriculated at NJMS. DSOF ¶ 11. The CSA reports decisions on academic standing, satisfactory academic progress, promotions, dismissals and graduation to the Faculty Council. *Id.*

year student status. Hill Dec. Ex. D. Plaintiff's name was included on the list. *Id.* At the meeting, the CSA voted unanimously to approve the list of the 2011 class members, including Plaintiff, to be promoted to third-year student status. *Id.* Ex. E. On June 2, 2009, the Faculty Council unanimously passed a motion to accept the minutes of the May 4, 2009 CSA meeting. *Id.* Ex. F.

In order to be eligible to begin a clinical clerkship, NJMS students must pass the USMLE Step-1. Webster Dec. Ex. Y. Initially, Plaintiff's deadline to take the USMLE Step-1 was May 25, 2009. Hill Dec. ¶ 21. Plaintiff requested, and was granted, several extensions to delay his exam date to May 28, 2010.[4] DSOF ¶ 16. On May 28, 2010, Julie Ferguson, the Assistant Dean for Student Affairs, emailed Plaintiff asking whether he took the USMLE Step-1. Hill Dec. Ex. J. Three days later, Plaintiff responded that he was taking care of his ill grandmother in Texas and that he had canceled his exam appointment as a result. *Id.* Plaintiff notes that on May 23, 2010 he informed Dr. Soto-Greene, the Vice Dean and Supervisor of the NJMS Office of Student Affairs, that he would be leaving to care for his grandmother, but he also concedes that he did not explicitly say that he would be unable to sit for the exam on May 28. Declaration of Lloyd A. Webster ("Webster Dec.") Ex. R.

On June 15, 2010, NJMS issued Plaintiff his first Professionalism Form. Hill Dec. Ex. J. The Form stated that Plaintiff "cannot be relied upon to complete assigned tasks by the given deadline." *Id.* More specifically, the Form explained that Plaintiff "did not sit for the [USMLE] Step 1 by the required deadline and did not communicate with NJMS administration regarding this in a timely and direct manner." *Id.*

---

[4] The one-year adjournment was due, in part, to Plaintiff's leave of absence from July 2009 to January 2010. Hill Dec. Ex. W at 2.

On June 12, 2012, Plaintiff received his second Professionalism Form for failing to comply with the School's immunization requirements. DSOF ¶ 19. At this time, Plaintiff was still a third-year student at NJMS.[5] *Id.* ¶ 20. The Form indicated that Plaintiff "needs continual reminders in the fulfillment of administrative responsibilities" and that Plaintiff "cannot be relied upon to complete assigned tasks by the given deadline." Hill Dec. Ex. M. Pursuant to the Professionalism Policy, the School was required to reference Plaintiff's receipt of both Forms in his MSPE because, in the School's view, both Forms were issued after Plaintiff had been promoted to third-year status.

On June 26, 2012, Plaintiff was informed via email that if he "would like to appeal the [School's Professionalism] [P]olicy and request that [the Professionalism Forms] not be included in [his] MSPE [he] must do so at" the CSA meeting on July 2, 2012. *Id.* Ex. N. Plaintiff advised the School that he intended to appeal the application of the Professionalism Policy that required reference of the two forms in his MSPE. DSOF ¶ 23.

Near the end of June 2012, Dr. James M. Hill, the Associate Dean for Student Affairs, was scheduled to meet with Plaintiff to assist him in preparing for the upcoming appeal before the CSA. DSOF ¶ 23. Plaintiff did not appear for the meeting with Dr. Hill. Hill Dec. Ex. N. As a result, Dr. Hill adjourned Plaintiff's appeal to the August CSA meeting rather than the July meeting. *Id.* On July 13, 2012, Plaintiff met with Dr. Hill. Webster Dec. Ex. S.

On July 31 and August 10, 2012, Plaintiff wrote letters to the CSA asking that the two Professionalism Forms not be included in his MSPE. Webster Dec. Exs. U & V. In the first letter, Plaintiff stated that his first Form "was issued during [the] pre-clerkship period of [his] education" and the second Form "was issued during the clerkship period of [his] education." *Id.* Ex. U.

---

[5] Although Plaintiff was originally scheduled to graduate in 2011, Plaintiff took multiple leaves of absence which apparently postponed his graduation date. Hill Dec. Ex. W at 2.

According to Plaintiff, Dr. Hill "threatened disciplinary action, unless [Plaintiff] removed any mention as to the fact that he received one [P]rofessionalism [F]orm in the pre-clerkship years and another [P]rofessionalism [F]orm in the clerkship years." Webster Dec. ¶ 44. Plaintiff explains that Dr. Hill told him that Plaintiff could only contest the reasons why the Professionalism Forms were filed, and not whether Plaintiff was a second or third-year student when the first Form was issued. *Id.* ¶ 45. Thereafter, Plaintiff sent the second letter to the CSA and did not include any reference to whether he was a second or third-year student when he received the first Professionalism Form.

On August 10, Plaintiff appeared before the CSA and presented his case as to why the Professionalism Forms should not be included in his MSPE. Hill De. Ex. R. After considering Plaintiff's presentation and letters, the CSA voted to reject Plaintiff's request. *Id.* Ex. Q. On August 13, the CSA sent a letter to Plaintiff memorializing its decision. *Id.* The letter also indicated that Plaintiff could submit a written appeal of the CSA's decision to the Dean of NJMS by August 24, 2012. *Id.*

On August 24, Plaintiff appealed the CSA's decision by writing a letter to Dr. Robert L. Johnson ("Dean Johnson"). *Id.* Ex. R. Plaintiff indicated that "there [was] information that [he] did not disclose to the [CSA], which [he] believe[s] change the dynamics of this situation." *Id.* Plaintiff, however, did not indicate in the letter what that information was. On September 13, 2012, Dean Johnson responded by requesting that Plaintiff provide a more specific explanation in support of his appeal. DSOF ¶ 28. On September 27, 2012, Plaintiff wrote Dean Johnson a second letter contesting, in more detail, the CSA's determinations. *Id.* ¶ 29. In neither the August 24 nor September 27 letters did Plaintiff assert that the first Professionalism Form was issued while he was a second-year student. According to Plaintiff, he did not do so because he believed that he

was "still restricted by Dr. Hill's threat." Webster Dec. ¶ 48. On January 9, 2013, by way of letter, Dean Johnson denied Plaintiff's appeal. Hill Dec. Ex. U.

In the fall of 2013, NJMS prepared final MSPEs for all of its students, including Plaintiff, who were expected to graduate in the spring of 2014, in connection with their applications to post-graduate residency programs. DSOF ¶ 31. On October 9, 2013, Plaintiff wrote a letter to Dr. Soto-Greene asking that the School amend his MSPE. Hill. Dec. Ex. V. Plaintiff requested that the answer to the question "Was the student the recipient of any adverse action(s) by the medical school or its parent institution?" be changed from "Yes" to "No." *Id.* Plaintiff also maintained that the receipt of his first Professionalism Form was prior to commencing his third year of school and therefore should not be included in his MSPE. *Id.* On October 10, 2013, NJMS provided Plaintiff with an amended MSPE, which answered "No" as to whether Plaintiff had faced any adverse action from the School. Hill Dec. Ex. W at 2. However, the "Summary" section of the MSPE was changed to indicate that Plaintiff received two Professionalism Forms, the reasons why he received those forms, and that Plaintiff had appeared before the CSA. *Id.* at 5. This information was moved from the "Academic History" section to the "Summary" section which was located towards the end of the MSPE. *Id.* On October 16, 20, and 22 Plaintiff again challenged the reference to his Professionalism Forms in the revised MSPE by sending emails to Dr. Soto-Greene. Hill Dec. Exs. X-Z; DSOF ¶ 34. On October 22, Dr. Soto-Greene responded that the MSPE provided to Plaintiff on October 10 was accurate and would be placed in his permanent academic record. *Id.* Ex. Y. On November 12, 2013, Dean Johnson wrote a letter to Plaintiff also confirming that the October 10 MSPE was accurate and that Plaintiff had received both Professionalism Forms following his promotion to third-year student status. *Id.* Ex. AA.

According to Plaintiff, this letter was the first time that he learned that both Professionalism Forms were included in his MSPE because NJMS had promoted him to third-year status prior to his receipt of the first form. Webster Dec. ¶¶ 91-93. Plaintiff has consistently taken the position that because the first Form was issued prior to taking the USMLE Step-1, he was still a second-year student. The School, on the other hand, has maintained that once Plaintiff completed his second-year courses, he was eligible for promotion to third-year status and was actually promoted by way of the CSA's vote in May 2009 and the Faculty Council's subsequent acceptance of the CSA minutes.

After his MSPE was released, Plaintiff secured an internal medicine residency at Woodhull Medical & Mental Health Center ("Woodhull") in Brooklyn, New York, for a one-year term beginning in July 2014. Declaration of William F. Maderer ("Maderer Dec.") (D.E. 47-4) Ex. 3 ("Pl. Dep.") at 155:2-25. After Plaintiff completed the first year of his residency at Woodhull, he completed a second year, from July 1, 2015 to June 30, 2016, also at Woodhull. At the time the current motion was filed, Plaintiff was scheduled to complete his third residency year on June 30, 2017. DSOF ¶ 40. Plaintiff also accepted an offer for a Hospitalist-Nocturnist position at Trinitas Regional Medical Center ("Trinitas") in Elizabeth, New Jersey starting in November 2017, at a salary of $230,000 plus benefits. Id. ¶ 41. Plaintiff did not submit an expert report in this matter, including any expert report regarding his alleged damages. Id. ¶ 42.

Plaintiff filed an eleven-count Complaint alleging the following causes of action: (1) gross negligence/willful or wanton misconduct, (2) false promise, (3) breach of contract/breach of implied in fact contract, (4) breach of implied covenant of good faith and fair dealing, (5) unjust enrichment, (6) violation of due process, (7) false light, (8) civil conspiracy, (9) negligent infliction of emotional distress, (10) intentional infliction of emotional distress, and (11) tortious interference

with a prospective business relation. In the accompanying Opinion addressing Defendants' motion to dismiss, the Court dismissed with prejudice Counts One, Seven, Eight, Nine, Ten, and Eleven. The Court also dismissed all claims against Dr. Barchi. Therefore, the Court addresses only the remaining counts here.

## III. STANDARD OF REVIEW

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.* "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)). A court's role in deciding a motion for summary judgment is not to evaluate the evidence and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts

showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## IV. LAW AND ANALYSIS

### A. Damages

Plaintiff argues that Defendants caused damage to his reputation and earning capacity, and caused him emotional distress. Pl. Opp. at 15. Defendants counter that Plaintiff's proof of damages are entirely speculative and Plaintiff's failure to submit an expert report is fatal to his claim of damages. Def. Br. at 38-39. The Court agrees with Defendants and grants summary judgment due to Plaintiff's failure to prove damage to his reputation and earning capacity. Additionally, because there is not genuine issue of material as to any of the counts except procedural due process and breach of contract (as discussed below), the Court does not reach the issue of whether Plaintiff has provided sufficient support for emotional distress damages.[6] The

---

[6] "Under New Jersey law, where the plaintiff has not been physically injured, s/he may recover for negligently inflicted emotional distress only if the resulting emotional distress is severe." *Bentley v. Atlantic County., N.J.*, No. 05-2942, 2009 WL 530880, at *4 (D.N.J. Mar. 3, 2009); *see also Houck v. Ferrari*, 57 F. Supp. 3d 377, 387 (D.N.J. 2014) ("[R]ecovery lies only if the plaintiff can prove the emotional distress produced by the defendant's tortious conduct was 'severe,' or 'genuine

issue of damages as it pertains to procedural due process and breach of contract will be discussed in Sections IV.B.i and IV.C, *infra*, and Plaintiff is limited a claim for nominal damages on both counts.

First, Plaintiff claims that the allegedly wrongful inclusion of the Professionalism Forms in his MSPE caused "a substantial loss in earnings and job experience." Pl. Opp. at 6. In particular, Plaintiff claims that he lost the opportunity to obtain a residency at the Einstein Healthcare Network ("Einstein"). *Id.* However, even assuming that the School wrongfully included the Professionalism Forms, Plaintiff would not have been accepted into a residency at Einstein because he failed the USMLE Step 2. Webster Dec. ¶¶ 87, 104. The Residency Director at Einstein, Dr. Merle A. Carter, told Plaintiff that they "historically do not rank anyone who has had a failure on any of their boards." *Id.* Ex. YY. Therefore, regardless of whether Plaintiff's Professionalism Forms were included in his MSPE, he would not have been a viable candidate for a residency at Einstein.[7] At a minimum, Plaintiff has failed to produce any evidence demonstrating that Einstein would have made an exception for Plaintiff.

Moreover, Plaintiff presents no competent evidence that he would have obtained a better residency, or a better paying job after his residency, but for the reference to his Professionalism

---

and substantial.'" (quoting *Innes v. Marzano–Lesnevich*, 435 N.J.Super. 198 (2014)). Plaintiff claims that Defendants caused him to suffer from a number of ailments, and as a result, he was severely emotionally distressed. It is unclear to the Court, however, whether the alleged degree and severity of Plaintiff's stated emotional distress meets the necessary legal threshold. Nonetheless, the Court does not address this issue here because Defendants are entitled to summary judgment on liability as to all counts, except procedural due process and breach of contract. Moreover, as explained below, Plaintiff has not established a genuine issue of material fact as to emotional distress concerning procedural due process or breach of contract, so he is precluded as a matter of law from seeking such damages on those counts.

[7] Plaintiff also makes vague and unsupported assertions that he would have obtained other "residencies and opportunities" at unidentified medical centers without specifying a position or salary. Pl. Dep at 207:3-13. Besides Plaintiff's conclusory claims, he fails to provide any specific facts or expert testimony to support his position.

Forms on his MSPE. Plaintiff secured a position at Trinitas earning $230,000 per year in addition to benefits. Plaintiff does not offer an expert report detailing the Professionalism Forms' effect on his residency opportunities, his earning capacity, or the salary that he would have made if they were not included in his MSPE. Instead, Plaintiff provides a "Physician Compensation Report" that depicts the average income for different types of doctors. Webster Dec. Ex. TT. According to Plaintiff, this report demonstrates that he should be making an additional $110,000 per year as an emergency medical physician. *Id.* Plaintiff, however, offers no competent proof that the inclusion of the Professionalism Forms on his MSPE prevented him from becoming an emergency medical physician. Plaintiff has not demonstrated that he has sufficient "knowledge, skill, experience, training, or education" to opine concerning the overall medical residency placement program in any year, much less the year applicable to him, nor has he demonstrated that he is qualified to testify as to which residency programs he would have been admitted to but for the inclusion of the two Professional Forms in his MSPE. *See generally* F.R.E. 702.

As a result, to substantiate this claim, Plaintiff was required to submit an expert report detailing the Professionalism Forms' impact, if any, on his residency opportunities, his earning capacity, and his professional placement. *See, e.g.*, *Rowland v. Novartis Pharm. Corp.*, 9 F.Supp.3d 553, 564-70 (W.D.Pa. 2014) (analyzing permissible expert testimony as to cause and effect). Plaintiff's expert would be required to have knowledge of the nationwide placement process when Plaintiff was applying for a residency and the impact the Professionalism Forms had on Plaintiff's ability to obtain a more prestigious residency than the one he secured at Woodhull. The expert must also be able to opine how much, if at all, the inclusion of the Professionalism Forms decreased Plaintiff's earning capacity after his residency. As noted, Plaintiff, a layperson who lacks the training, education, and expertise in this particular field, may not offer his own

testimony to satisfy his burden of production. *See Benjamin v. Peter's Farm Condo. Owners Ass'n*, 820 F.2d 640, 643 (3d Cir. 1987) (finding that reliance on a plaintiff's personal beliefs of potential lost earning capacity was speculative and without proper foundation). Plaintiff's failure to provide an expert opinion on this subject precludes him from recovering for any loss of earning capacity.

Next, Plaintiff contends that including the Professionalism Forms in his MSPE damaged his professional reputation. In his deposition, Plaintiff was asked whether his reputation had been damaged since he began his residency at Woodhill, to which Plaintiff responded "[s]ince I've been in Woodhull to my knowledge it has not." Pl. Dep. 206:20-23. Thus, Plaintiff concedes that the inclusion of the Professionalism Forms has not harmed his professional reputation.[8]

### B. Due Process

Plaintiff argues that NJMS violated his procedural due process rights by failing to provide him notice and a meaningful opportunity to be heard. Pl. Opp. at 7-10. Plaintiff maintains that NJMS's inclusion of the two Professionalism Forms in his MSPE was a disciplinary matter, which requires greater due process protection than academic matters. *Id.* at 8. Plaintiff posits that NJMS did not notify him that he was promoted to third-year student status, and therefore Plaintiff could not properly contest the inclusion of the Professionalism Forms in his MSPE. *Id.* at 9. Plaintiff argues that he was not given a meaningful opportunity to be heard because "he was threatened with disciplinary action if he contested Dr. Hill's determination regarding promotion" to third-year status. *Id.* at 10. As to substantive due process, Plaintiff contends that the School's disclosure of the Professionalism Forms in his MSPE implicated "a very substantial liberty interest" that caused

---

[8] In response to an incomplete question, Plaintiff indicated that an unidentified person "think[s] less" of him. This evidence is insufficient to preclude summary judgment.

him reputational damage and interfered with "opportunities for higher education and employment." *Id.*

Defendants maintain that Plaintiff is entitled to minimal due process requirements in the context of challenging a public university's academic decision-making. Def. Br. at 12. Defendants argue that regardless of whether the inclusion of Plaintiff's Professionalism Forms is considered academic or disciplinary, Plaintiff was provided with a full and fair opportunity to be heard. Def. Rep. at 5. Defendants posit that the question of whether Plaintiff was given notice of his promotion to third-year student status "is irrelevant to the dispositive issue of whether Defendants gave him notice of the Professionalism Policy and his right to appeal its application." *Id.* In regard to substantive due process, Defendants contend that there is no cognizable property interest in post-graduate education or the specific content of an MSPE, but even if there was, Plaintiff fails to prove that Defendants deprived him of that right by an arbitrary and deliberate abuse of authority. Def. Br. at 17.

The Court concludes that Plaintiff has presented insufficient proof that Defendants violated his substantive due process rights. Therefore, the court grants summary judgment in favor of Defendants in this regard. As to procedural due process, Plaintiff has presented sufficient proof as to liability, but not as to damages. Accordingly, Plaintiff's procedural due process claim survives summary judgment, but his potential recovery is limited to nominal damages.

### i. Procedural Due Process

The essence of a procedural due process claim is "notice and an opportunity to be heard." *Kadakia v. Rutgers*, 633 F. App'x 83, 88 (3d Cir. 2015). In the context of a university's decision-making as to its students, there is a difference in the amount of due process required for academic actions as opposed to disciplinary actions. *Bd. of Curators of Univ. of Mo. v. Horowitz*, 435 U.S.

78, 88 n.4 (1978) ("There is a clear dichotomy between a student's due process rights in disciplinary dismissals and in academic dismissals." (internal quotation marks omitted)). "When a student is discharged for academic . . . reasons, all that is required to satisfy procedural due process is 'an informal faculty evaluation with the student.'" *Kadakia*, 633 F. App'x at 88 (quoting *Mauriello v. Univ. of Med. & Dentistry of N.J.*, 781 F.2d 46, 51 (3d Cir. 1986)). Similarly, in regard to disciplinary actions, a "formal hearing" is not required. *Horowitz*, 435 U.S. at 85. However, there must at least be an "informal give-and-take" between the student and the school that provides the student with "the opportunity to characterize his conduct and put it in what he deems the proper context." *Id.* at 86 (quoting *Goss v. Lopez*, 419 U.S. 565, 584 (1975)). In evaluating whether procedural due process has been satisfied, the Supreme Court has "frequently emphasized that 'the very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation.'" *Id.* (quoting *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961)).

Here, the Court need not decide whether NJMS's inclusion of Plaintiff's two Professionalism Forms in his MSPE was an academic or disciplinary action. Under either standard, there is a genuine issue of material fact as to whether Plaintiff was afforded the requisite amount of due process.

At first glance, it appears that Plaintiff was provided adequate procedural due process. The School informed Plaintiff that the Professionalism Forms were to be included in his MSPE and that he could appeal that decision at the next CSA meeting. Plaintiff informed NJMS that he would be appealing the decision and wrote two letters to the CSA asking that the Professionalism Forms not be included in his MSPE. Plaintiff met with Dr. Hill to prepare for the CSA meeting. Plaintiff then appeared before the CSA and explained why he believed the Professionalism Forms should

not be included in his MSPE. After considering Plaintiff's letters and presentation, the CSA rejected Plaintiff's request and informed him that he could appeal its decision to Dean Johnson. Plaintiff appealed to Dean Johnson by way of two separate letters. Dean Johnson considered Plaintiff's letters and denied his appeal. After exhausting the appeal process, Plaintiff informally appealed the reference of the Professionalism Forms in his MSPE. Once again, NJMs considered Plaintiff's request, but it was ultimately denied.

Despite the above-referenced procedures afforded to Plaintiff, there is a genuine issue of material fact as to whether NJMS deprived Plaintiff of his procedural due process. Plaintiff claims that Dr. Hill threatened him with disciplinary action if Plaintiff argued to the CSA or Dean Johnson that he was a second-year student at the time he received the first Professionalism Form. Defendants argue that Plaintiff has not presented competent evidence on this point, but Plaintiff's testimony alone is sufficient to establish a genuine material issue of fact. Moreover, the documents on which Plaintiff relies to support his position could reasonably be interpreted to support his claim. Plaintiff's initial letter raised the issue concerning his third-year status while his second omitted the reference. Plaintiff claims that the reason he did not pursue his argument concerning his third-year status was due to Dr. Hill's threats. Dr. Hill certainly denies that he made any such threats, so the evidence submitted present a classic factual dispute that precludes summary judgment.

As a result, and accepting Plaintiff's evidence as true, Plaintiff was only able to argue that the Professionalism Forms should not have been issued. Plaintiff was not permitted to present his theory that the first Form was issued when he was a second-year student, and thus, neither Form should have been included in his MSPE. Depriving Plaintiff of this opportunity to be heard stripped him of the ability to present his case the CSA and Dean Johnson in a meaningful way. In

short, Plaintiff did not have an "opportunity to be heard" on the issue if his testimony is credited. For this reason, the Court finds that there is a genuine issue of material fact to whether Plaintiff was denied procedural due process.

The issue still remains, however, whether Plaintiff has set forth proof of damages as a result of Defendants' alleged procedural due process violation. As discussed in Section IV.A, *supra*, Plaintiff has not presented adequate proof to recover damages for injury to his reputation or lost earning capacity. The only remaining damages Plaintiff may potentially recover for violating due process is for emotional distress.

In *Carey v. Piphus*, the United States Supreme Court held that damages for emotional distress may be recovered when a plaintiff's procedural due process rights are violated. 435 U.S. 247 (1978). In *Carey*, the Court explained that to recover emotional distress damages the plaintiff must prove that "he actually suffered distress because of the denial of procedural due process itself." *Id.* at 263. This means that a plaintiff may not recover for emotional distress damages caused by some other event other than the deprivation of due process itself. For example, in *Bentley v. Atlantic County, New Jersey*, No. 05-2942, 2009 WL 530880, at *1 (D.N.J. Mar. 3, 2009), an Atlantic County Sheriff's Officer was suspended for being psychologically unfit for duty. The plaintiff argued that she was denied procedural due process in her suspension hearing and subsequently suffered from emotional distress. *Id.* at *3. The court made clear that the plaintiff could not recover for any distress attributed to the suspension and the resulting financial hardship. *Id.* at *3, 6. Instead, the plaintiff "bore the burden of proving that she actually suffered distress because of the *denial of procedural due process itself, i.e.,* the delay" in the plaintiff's hearing. *Id.* at *3.

Here, Plaintiff argues that he suffered from emotional distress due to the effect that referencing the Professionalism Forms in his MSPE had on his ability to obtain a residency. Plaintiff does not argue that he suffered emotional distress because of the alleged denial of his procedural due process rights, that is, his inability to argue that he was improperly categorized as a third-year student. Plaintiff does not claim that his inability to argue during his appeals that he was a second-year student when he received the first Professionalism Form caused him any emotional distress. Instead, Plaintiff claims that he suffered emotionally distress as a result of the events that took place after his hearing. For this reason, Plaintiff may not recover emotional distress damages for the alleged violation of procedural due process.

Despite Plaintiff's inability to prove damages, his procedural due process claim survives summary judgment. In *Carey*, the Court stated that "[b]ecause the right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions . . . we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *Carey*, 435 U.S. at 266. Therefore, Plaintiff's procedural due process claim may go forward with the potential to recover nominal damages only. To be clear, nominal damages are a trivial amount of monetary recovery that often does not exceed $1. *See, e.g., Harris v. Ricci*, No. 08-6282, 2014 WL 3500128, at *2 (D.N.J. July 14, 2014) (noting recovery of nominal damages for $1 because of procedural due process violation); *Chelekapalli v. Ramagiri*, No. 07-1845, 2009 WL 1297749, at *1 (D.N.J. May 8, 2009) (awarding nominal damages for $1); *see also Romano v. U–Haul Intern.*, 233 F.3d 655, 671 (1st Cir. 2000) (finding that although nominal damages are not limited to $1.00, the nature of nominal damages is such that they should be minimal).

Accordingly, the Court denies Defendants' motion for summary judgment as to procedural due process, but limits Plaintiff's recovery to nominal damages only.

### ii. Substantive Due Process

Plaintiff contends that NJMS violated his substantive due process rights because its "decision to disclose [the] inaccurate MSPE eroding [his] good name implicates a very substantial liberty interest" which caused damage to his reputation and "opportunities for higher education and employment." Pl. Opp. at 10. Defendants counter that Plaintiff does not have a property interest in post-graduate public education, but that even if he did, Defendants did not deprive him of that right through an arbitrary and deliberate abuse of authority. Def. Br. at 17. The Court agrees with Defendants and finds that Plaintiff fails to set forth adequate proof that Defendants violated his substantive due process rights.

Initially, the Court notes that the Third Circuit "has strongly suggested that the right to continued graduate education is not protected by substantive due process." *Manning v. Temple Univ.*, 157 F. App'x 509, 514 (3d Cir. 2005); *see also McMahon v. Rutgers*, No. 11-02306, 2013 WL 5937416, at *9 (D.N.J. Nov. 4, 2013), *aff'd sub nom. McMahon v. Salmond*, 573 F. App'x 128 (3d Cir. 2014) (stating that the court is "skeptical" that the plaintiff "has a constitutionally protected interest in his continuing enrollment in a graduate-level nursing program"). The Court, however, need not decide whether Plaintiff has a protectable substantive property interest in the content of his MSPE because Plaintiff presents insufficient proof that Defendants arbitrarily and deliberately abused their authority.

To demonstrate a violation of substantive due process, a plaintiff is "required to show that he was deprived of a fundamental property right through an arbitrary and deliberate abuse of authority." *Kadakia*, 633 F. App'x at 87. Substantive due process rights are narrower in scope

18

when compared to the rights protected by procedural due process. *Mucci v. Rutgers*, No. 08-4806, 2011 WL 831967, at *18 (D.N.J. Mar. 3, 2011). In the context of academic decisions, the Supreme Court has cautioned that courts reviewing those decisions "should show great respect for the faculty's professional judgment." *Regents of Univ. of Michigan v. Ewing*, 474 U.S. 214, 225 (1985). Put simply, courts "may not override [a university's decision] unless it is such a substantial departure from accepted academic norms as to demonstrate that the person or committee responsible did not actually exercise professional judgment." *Id.* In other words, the university's decision must have been arbitrary and capricious, which is demonstrated by showing that the university "did not have a rational basis for its conduct or that it was motivated by bad faith or ill will." *Mucci*, 2011 WL 831967, at *18.

Here, Plaintiff presents insufficient proof that NJMS acted arbitrarily and capriciously by including the Professionalism Forms in Plaintiff's MSPE. To the contrary, the School reasonably interpreted and abided by its Professionalism Policy. The Professionalism Policy makes clear that if a student receives two or more Professionalism Forms in his third and/or fourth years, then the forms will be included in the student's MSPE. It is undisputed that Plaintiff received two Professionalism Forms. Plaintiff's contends that he received the first Form during his pre-clerkship phase of school before he took the USMLE Step-1, and thus neither Form should not have been included in his MSPE. In other words, Plaintiff takes the position that until he passed the USMLE Step-1 and began his clerkship, he remained a second-year student. Plaintiff's position, however, is inconsistent with the undisputed material facts in the record. *See, e.g.*, Hill Dec. ¶ 10 ("After being promoted to third-year status, students have approximately two months to prepare for, take, and record a score for the USMLE Step-1 Exam prior to beginning their clerkships."). While Plaintiff may not have been able to begin his clerkship until he took the test,

he has not presented any evidence that he could not be considered a third-year before taking the test.

Once Plaintiff finished his second-year academic curriculum, he was placed on a list of students eligible for promotion to third-year status. On May 4, 2009, the CSA voted to promote all of the eligible students to third-year status, which the Faculty Council subsequently ratified. At this time, Plaintiff became a third-year student. Although Plaintiff was still in his pre-clerkship phase because he had not completed all the necessary requirements, the fact that Plaintiff completed his second-year curriculum and was approved for third-year student status demonstrates that Plaintiff was in fact a third-year student. At a minimum, the promotion to third-year status was not an arbitrary or capricious decision by the School.[9]

On June 15, 2010, about one year after becoming a third-year student, Plaintiff received his first Professionalism Form for failing to sit for the USMLE Step-1 by the required deadline. On June 12, 2012, Plaintiff received his second Professionalism Form for failing to comply with NJMS's immunization requirements. Thus, Plaintiff received both Professionalism Forms as a

---

[9] Plaintiff argues that the CSA's vote on May 4, 2009 did not actually promote Plaintiff to third-year status. In support, Plaintiff cites to CSA meeting minutes from 2007 where the CSA divided their vote on promoting students into two categories: (1) promotion of eligible students and (2) students eligible for promotion upon completion of incomplete or remediation requirements. Webster Dec. Exs. C & D. Plaintiff maintains that he was in the latter category, which does not officially promote students until "satisfactory completion of their medical school requirements." NJMS admits that dividing students into these two categories is "common practice." *Id.* at Ex. AA. However, regardless of which category Plaintiff was in, this fact is not material to the outcome of this motion. NJMS's determination that Plaintiff's Professionalism Forms should be included in his MSPE based on its interpretation of its own Professionalism Policy is afforded great deference. *See Ewing*, 474 U.S. at 225. Plaintiff presents insufficient evidence that NJMS's interpretation of its Professionalism Policy was arbitrary, capricious, or motivated by bad faith. *Mucci*, 2011 WL 831967, at *18. Therefore, Defendants did not violate his substantive due process rights.

third-year student,[10] and consistent with the School's Professionalism Policy, NJMS referenced them in Plaintiff's MSPE.

For these reasons, the Court concludes that Defendants did not violate Plaintiff's substantive due process rights. Therefore, Summary judgment is granted in favor of Defendants as to substantive due process in Count Six.

### C. Breach of Contract

Plaintiff argues that NJMS breached a contract with Plaintiff by failing to "follow its own established Promotion, USMLE, and Promotion Policy, in a significant way thus causing harm." Pl. Opp. at 11. Defendants maintain that the School did not fail to follow its internal procedures or deviate in a significant way from its Professionalism Policy. Def. Br. at 25. The Court finds that there is a genuine issue of material fact as to whether NJMS breached its contract with plaintiff, and therefore denies summary judgment. In so finding, the Court essentially follows the same analysis applied to Plaintiff's procedural due process claims, discussed above.

Although a student may bring a claim for breach of contract against his or her university, "a student's contract claim arising from a public university's disciplinary process is not adjudicated under strict contract principles." *Collick v. William Paterson Univ.*, No. 16-471, 2016 WL 6824374, at *22 (D.N.J. Nov. 17, 2016); *see also Hernandez v. Don Bosco Preparatory High*, 322 N.J. Super. 1, 17 (App. Div. 1999) ("New Jersey courts have declined to characterize the relationship between student and university as contractual."). Instead, much like a student's claim for lack of procedural due process, a higher education institution must guarantee a "fair procedure" to protect against "arbitrary or capricious decision making," including "adequate notice of

---

[10] It appears that as of 2012 Plaintiff remained a third-year student because he had taken multiple leaves of absence in 2009 and 2010. Webster Dec. Ex. SS at 1.

deficiencies," an "opportunity to examine evidence of those deficiencies," and the "right to present a case to the decision-making authority." *Mittra v. Univ. of Med. & Dentistry of N.J.*, 316 N.J. Super. 83, 91-92 (App. Div. 1998)). If the student cannot produce evidence that the school "deviated in some significant way from its published rules and regulations . . . [a] mere conclusory allegation . . . that appropriate procedures were not followed [is] insufficient to withstand summary judgment." *Id.* at 92.

Here, Plaintiff's breach of contact claim survives for the same reason as his procedural due process claim. As explained above, there is a genuine issue of material fact as to whether Dr. Hill threatened Plaintiff with disciplinary action if Plaintiff contested whether he was a second or third-year student at the time he received the first Professionalism Form. Plaintiff's inability to address this issue in his appeals deprived him of a fair opportunity to adequately present his case to the CSA and Dean Johnson. Therefore, Plaintiff has presented adequate proof of liability as to his breach of contract claim to survive a motion for summary judgment.

Plaintiff, however, has not demonstrated any damages caused by Defendants' alleged breach. As noted above, Plaintiff's only viable theory of recovery is for emotional distress damages. "Under New Jersey law, a plaintiff may recover for emotional distress damages resulting from a breach of contract where the breach was 'both intentional and outrageous and proximately caused severe, foreseeable emotional distress.'" *Zawadowicz v. CVS. Corp.*, 99 F. Supp. 2d 518, 540-41 (D.N.J. 2000) (quoting *Picogna v. Bd. of Educ.*, 143 N.J. 391, 397 (1996)). Here, Plaintiff has presented insufficient proof to meet this high standard. Dr. Hill's alleged threat of disciplinary action does not rise to the level of outrageous conduct necessary to recover emotional distress damages for a breach of contract. Plaintiff may, however, recover nominal damages for Defendants' alleged breach. *See Norwood Lumber Corp. v. McKean*, 153 F.2d 753, 755 (3d Cir.

1946) ("For a breach of contract the injured party is entitled to nominal damages even when its proof fails to show substantial loss."); *Zacks v. NetJets Inc.*, No. 11-2537, 2011 WL 4387147, at *2 (D.N.J. Sept. 20, 2011) (same).

### D. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiff argues that Defendants acted in bad faith when Dr. Hill "forbid [Plaintiff] from telling his side of the story with threats of further discipline." Pl. Opp. at 12. Plaintiff contends that Defendants acted in bad faith by failing to inform him of his "purported promotion" in a timely fashion so that he could adequately "confront and defend the evidence against him." *Id.* at 12-13. Finally, Plaintiff maintains that Defendants did not act in good faith by inappropriately referencing the Professionalism Forms in his MSPE. *Id.* at 13. The Court finds that Plaintiff may not rely on the same facts to support both his claims for breach of contract and breach of the covenant of good faith and fair dealing. Therefore, the Court grants summary judgment in favor of Defendants.

To succeed on a claim for breach of the covenant of good faith and fair dealing, a plaintiff must prove that "(1) the defendant acts in bad faith or with a malicious motive, (2) to deny the plaintiff some benefit of the bargain originally intended by the parties, even if that benefit was not an express provision of the contract." *Yapak, LLC v. Mass. Bay Ins. Co.*, No. 09-3370, 2009 WL 3366464, at *2 (D.N.J. Oct. 16, 2009). "In New Jersey, a plaintiff cannot maintain a claim for breach of the implied covenant of good faith and fair dealing when the conduct at issue is governed by the terms of an express contract or the cause of action arises out of the same conduct underlying the alleged breach of contract." *Kare Distribution, Inc. v. Jam Labels & Cards LLC*, No. 09-00969, 2012 WL 266386, at *7 (D.N.J. Jan. 30, 2012) (internal quotation marks omitted).

In this case, Plaintiff relies on the same set of facts to support his breach of the covenant of good faith and fair dealing and breach of contract claim. Both claims are predicated on NJMS's

alleged improper inclusion of the Professionalism Forms in Plaintiff's MSPE and Plaintiff's inability to adequately appeal the School's decision to do so. Plaintiff does not offer an alternative theory to support his claim for breach of good faith and fair dealing. Therefore, summary judgment is granted in favor of Defendants as to Count Four.

### E. Unjust Enrichment

Plaintiff argues that summary judgment is inappropriate as to his unjust enrichment claim. Plaintiff contends that NJMS's retention of his tuition is inequitable when the School failed to follow its established practices. The Court finds this argument unpersuasive and grants summary judgment in favor of Defendants.

"To state a claim for unjust enrichment, a plaintiff must allege "'(1) that the defendant has received a benefit from the plaintiff, and (2) that the retention of the benefit by the defendant is inequitable.'" *Hassler v. Sovereign Bank*, 644 F. Supp. 2d 509, 519 (D.N.J. 2009), *aff'd*, 374 F. App'x 341 (3d Cir. 2010). Plaintiff has cited no legal support, or similar factual situation, in which an unjust enrichment claim was sustained. Here, Plaintiff presents no evidence that it would be inequitable to allow NJMS to retain his tuition, fees, and other expenses for violating its own policies by referencing Plaintiff's Professionalism Forms in his MSPE. As discussed in Section IV.B.ii above, NJMS did not violate its internal policies -- at a minimum, the School did not do so in an arbitrary and capricious manner. Moreover, it is not inequitable for NJMS to retain Plaintiff's tuition when he received the precise benefit of the bargain that he expected -- a medical degree. For these reasons, summary judgment is granted in favor of Defendants as to Count Five.[11]

### V. CONCLUSION

---

[11] In regard to Count Two, "false promise," the parties have identified no New Jersey authority, and the Court has found none, recognizing this claim as a viable cause of action. Therefore, summary judgment is also granted in favor of Defendants as to Count Two.

For the reasons set forth above, Defendants' motion is granted in part and denied in part. Summary judgment is granted in favor of Defendants as to Counts Two, Four, Five, and substantive due process in Count Six. Summary judgment is denied as to breach of contract in Counts Three and procedural due process in Count Six, but Plaintiff is limited to recovering nominal damages in both counts. For the reasons stated in the accompanying motion to dismiss Opinion, Counts One, Seven, Eight, Nine, Ten, and Eleven are dismissed with prejudice. An appropriate Order accompanies this Opinion.

Dated: August 4, 2017

John Michael Vazquez, U.S.D.J.